**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SELENA E. MOLINA
SENIOR MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

July 25, 2025

Kashif I. Chowdhry, Esquire
Madeline S. Carlson, Esquire
Parkowski, Guerke & Swayze, P.A.
909 Silver Lake Blvd.,1st Floor
Dover, DE  19904

Jason C. Powell, Esquire
Laurel A. LaLone, Esquire
The Powell Firm, LLC
1813 N. Franklin Street
Wilmington, DE 19802

Dean A. Campbell, Esquire
Law Office of Dean A. Campell, PA
703 Chestnut Street
Milton, DE 19968

> RE:  *William H. Williams, V., et al. v. Susan F. D'Andelet*,
>       C.A. No. 2024-1349-SEM

Dear Counsel:

Through this letter, I: (1) deny the plaintiffs' motion to disqualify counsel, filed March 18, 2025 (the "Motion to Disqualify");[1] (2) grant in part the plaintiffs' motion to compel discovery, filed March 27, 2025 (the "Motion to Compel Discovery");[2] (3) grant in part the defendant's motion to stay discovery, filed March 13, 2025 (the "Motion to Stay Discovery");[3] and (4) deny the plaintiffs' motion to

---

[1] Docket Item ("D.I.") 18.

[2] D.I. 23.

[3] D.I. 12.

compel a medical examination, filed March 13, 2025 (the "Motion to Compel Examination").[4] My reasoning for each follows a brief recitation of the posture on which these requests come before me.

## I.    BACKGROUND

This report builds upon my June 9, 2025 oral ruling.[5] Recognizing the need for expeditious consideration, I provide only this brief posture and address the salient facts underlying the requests before me in my analysis.

Through this action, William H. Williams, V and Steven D. Williams (the "Plaintiffs"), individually and in their capacity as agents for Nettie May Williams (the "Principal") dispute the authority of Susan F. D'Andelet (the "Defendant")[6] to act on behalf of the Principal.

On June 9, 2025, I heard oral argument on seven pending motions. For the reasons explained at that hearing, I granted the Principal's motion to intervene in this action, denying the Plaintiffs' motion to stay intervention. I also granted the Plaintiffs' motion to amend the underlying complaint. I took under advisement and

---

[4] D.I. 16.

[5] *See* D.I. 46.

[6] I use the singular "Defendant" to avoid confusion, but acknowledge that the Plaintiffs brought this action against the Defendant in multiple capacities.

address herein: (1) the Motion to Disqualify, (2) the Motion to Compel Discovery and counter Motion to Stay Discovery, and (3) the Motion to Compel Examination.

### 1.  __The Motion to Disqualify is denied without prejudice.__

Through my June 9, 2025 ruling, the Principal joined this action as an intervenor. Through the Motion to Disqualify, the Plaintiffs challenge the Principal's counsel of record ("Counsel") and seek Counsel's disqualification.

The facts purportedly supporting disqualification are undisputed. Counsel is also the attorney who prepared and worked with the Principal to execute a revocation of powers of attorney on September 6, 2024 (the "Revocation"), an action contested by the Plaintiffs. In connection with the Revocation, Counsel "personally conducted two (2) extensive interviews with [the Principal] to test her short term and long-term memory and her general mental capacity[,] [and] was satisfied on both occasions that [the Principal] was, and is, of competent mind to execute legal documents, including but not limited to, the . . . Revocation."[7] With this direct personal knowledge, Counsel acknowledges that he cannot, and will not, act as both "advocate and witness" if this matter goes to trial.[8] But he argues that his

---

[7] D.I. 6, Ex. D at 2.

[8] *See* D.I. 39 at 14–16. I note that Counsel's pagination appears, at points, toward the middle of a page. For clarity's sake, citations to page numbers are treated the same as if formatted properly, *i.e.*, such that the referenced information can be found preceding the page number.

participation now, at the pleading and discovery stage, is appropriate and it is premature to disqualify him.[9] I agree.

"[M]otions to disqualify an opposing attorney should be viewed cautiously because of the potential tactical abuses."[10] Thus, the challenger bears a high burden to prove by clear and convincing evidence that the conflict prejudices the movant's rights and calls into question the "fair or efficient administration of justice."[11] With this high burden, the prejudice must be imminent, not speculative. That is where the Plaintiffs fall short.

The Plaintiffs seek disqualification for purported conflicts under Rules 3.7 and 1.7 of the Delaware Lawyers' Rules of Professional Conduct. But, even if I agree that Counsel has a conflict under either rule, the Plaintiffs have not provided clear and convincing evidence of imminent prejudice to their rights and the administration of justice at this stage of the proceeding.

Under 12 *Del. C.* § 49A-116, and as discussed more fully below, I am required to dismiss the Plaintiffs' action upon the Principal's motion unless I find that the Principal lacks capacity. At the June hearing, I granted the Principal's motion to intervene, through which the Principal forecasted an impending motion to dismiss.

---

[9] *Id.*

[10] *In re Waters*, 647 A.2d 1091, 1095 (Del. 1994) (citation modified).

[11] *Id.* at 1096.

My consideration of that motion will turn solely on the Principal's current capacity, an inquiry for which Counsel's personal knowledge will not be necessary.

I find Vice Chancellor Zurn's recent decision in *Hillblom v. Wilmington Trust Co.* instructive.[12] There, the plaintiff's counsel of record provided a factual declaration opposing the defendant's motion for summary judgment.[13] He also played a factual role in discovery; he was referenced in the plaintiff's discovery responses as a person with knowledge and, because of that, was deposed by the defendant and ultimately listed on the defendant's witness list.[14] A few weeks after that deposition, and about one month before trial, the defendant moved to disqualify.[15] Vice Chancellor Zurn acknowledged the potential violation of the Rules of Professional Conduct, but denied the motion for lack of prejudice.[16] In doing so, she looked to and quoted from *In re Straight Path Communications Inc. Stockholder Litigation*: "enforcement of the ethical rules of conduct is solely within the purview of the Supreme Court."[17]

---

[12] *See* 2025 WL 1730207 (Del. Ch. June 16, 2025).

[13] *Id.* at *1.

[14] *Id.*

[15] *See id.*

[16] *Id.* at *3.

[17] *Id.* at *2 (quoting 2021 WL 2913069, at *4 (Del. Ch. July 12, 2021)) (citation modified).

My holding follows the lead of *Straight Path*. There, Vice Chancellor Glasscock was asked to impose a deadline for trial counsel to elect its trial role as witness or advocate,[18] because counsel had also personally witnessed various aspects of the challenged transaction.[19] Trial counsel had been acting as lead counsel, taking depositions and steering the discovery process, but had also been deposed, himself, due to his personal knowledge.[20] It was only leading up to trial that the other side sought clarification.[21] But, per Vice Chancellor Glasscock, the request was premature, and his decision would be advisory absent confirmation that counsel intended to testify at trial on matters that would render the testimony prejudicial, if permitted.[22]

The same is true here. Whether Counsel has or will violate the Rules of Professional Conduct is not a decision for me to make. It is only if such conflict

---

[18] The Vice Chancellor explained that, although the plaintiffs' motion was technically styled as one to supplement the case schedule to impose an election deadline regarding counsel's role at trial (*i.e.*, witness or advocate), the defendants construed it as a motion to disqualify. *Straight Path*, 2021 WL 2913069, at *1–2.

[19] *Id.* at *1.

[20] *Id.* at *2.

[21] *Id.* at *3.

[22] *Id.* at *4. Vice Chancellor Glasscock noted, however, that "if an attorney seeks to hop between roles at trial, jack-in-the-box fashion, th[e] issue would necessarily be before [him]; as presiding judge [he] must address it, *sua sponte* or otherwise." *Id.* at *3; *see also Waters*, 647 A.2d 1091 (Del. 1994) (finding error when the trial court did not so intervene).

invades the administration of justice, to the prejudice of the Plaintiffs, that I can dispossess the Principal of her counsel of choice. That extreme remedy (arguably a sanction) is not supported on the current record. The Motion to Disqualify is denied, without prejudice to renew when ripe.

### 2. The Motion to Compel Discovery and Motion to Stay Discovery are both granted in part.

The Plaintiffs next ask me to compel the Defendant to respond to the Plaintiffs' interrogatories and discovery requests. Because of the Defendant's failure to timely respond to the discovery, the Plaintiffs also seek to recover their fees and costs incurred in connection therewith.[23] The Defendant responds that, without a first-requested meet-and-confer, the Motion to Compel Discovery is premature, discovery should be stayed pending the Principal's forthcoming motion to dismiss, and the Defendant is entitled to fee shifting.[24] The Motion to Compel Discovery is well placed, and the Defendant's avoidance of discovery served many months ago is worthy of fee shifting. Future discovery, however, should be stayed.

There is no dispute that the Plaintiffs' discovery requests were served on January 20, 2025,[25] and the Defendant's deadline to respond was February 28,

---

[23] D.I. 23 at 5–6.

[24] D.I. 38 at 7–9.

[25] D.I. 4; D.I. 23, Exs. A, B.

2025.[26] That deadline came and went, and the Defendant, still to date, has failed to respond. The only explanations she provides are that the Plaintiffs failed to meet-and-confer before filing the motion, and that the discovery requests may be mooted by other filed and forthcoming motions.[27] These excuses are wholly insufficient. The Defendant shall answer the outstanding interrogatories no later than fourteen days from the date of this ruling. Given my ruling on the stay request, below, and cognizant of the burden and expense of document collection, review, and production, I will not require responses to the document request (thus, the "granted in part"). I will, however, shift fees in the Plaintiffs' favor under Rule 37(a)(4)(C), in an amount to be determined later in these proceedings.[28]

Other than the responses required by this ruling, discovery should be stayed pending the Principal's impending motion to dismiss. "This court often stays discovery during the pendency of a dispositive motion to prevent what may

---

[26] D.I. 23, Ex. A at 1–2 (requesting that the Defendant "answer the following interrogatories separately, fully, and under oath within forty-five (45) days of service of the Complaint"); D.I. 23, Ex. B at 1–2 (request for production seeking same).

[27] D.I. 38.

[28] *See Tavistock Civic Ass'n, Inc. v. Owen*, 223 A.3d 436 (Del. 2019) (TABLE) (affirming then-Magistrate Zurn's exercise of discretion under Rule 37(a)(4)(C) to apportion the reasonable expenses incurred in bringing a motion to compel to one party). Although "[i]nterim awards are commonly used to address discovery conduct[,]" the "power to award fees, including interim fees, is part of the original authority of the chancellor to do equity in a particular situation." *Kurz v. Holbrook*, 2010 WL 3028003, at *1 (Del. Ch. July 29, 2010) (citation modified). Equity does not require an interim award in this action.

ultimately be unnecessary discovery."[29] But the decision to do so "rests within the discretion of this court."[30] On the unique posture before me, and with the timeline initiated below, I exercise my discretion to stay discovery pending resolution of the Principal's impending motion to dismiss.

### 3.    <u>The Motion to Compel Examination is denied.</u>

The most difficult of the outstanding motions is the Motion to Compel Examination. Therein, the Plaintiffs ask me to compel the Principal to undergo a mental examination and, to the extent necessary and required, request an order requiring the Defendant to "cooperate and make [the Principal] available for such mental examination."[31] For the reasons I will explain, the Motion to Compel Examination must be denied.

Under Rule 35, "[w]hen the mental or physical condition . . . of a party . . . is in controversy, the Court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner . . . ." The burden is on the moving party to show that: (1) the mental

---

[29] *Deane v. Maginn*, 2021 WL 4097327, at *1 (Del. Ch. Sep. 8, 2021).

[30] *Id.*

[31] D.I. 16 at 2. The Defendant challenges the Plaintiffs' standing to bring the Motion to Compel Examination as purported agents for the Principal, but Rule 35 does not require agency standing.

condition is in controversy, and (2) there exists good cause for the examination.[32]

For mental condition to be "in controversy," it must have been asserted by a party in support of, or in defense of, a claim.[33] "The good cause element . . . requires the movant to show that expert testimony is necessary to establish a lack of capacity."[34] And there must be no other way to obtain the information sought.[35]

In applying this test, however, I must remain cognizant of the unique attributes of this action and the presumptions that come with it. As I noted earlier, the Principal has a statutory right to dismissal of this type of action if she has the requisite capacity.[36] By statute, capacity is presumed.[37] The party challenging capacity, thus, bears the burden to present a *prima facie* case of lack of capacity. "Only if she does so can—and will—this Court decline to grant a principal's motion to dismiss and

---

[32] *In re Tigani*, C.A. No. 7339-VCL (ML) [hereinafter *Tigani*], D.I. 109 at 7:6–11 (Del. Ch. Oct. 28, 2013), *adopted*, *Tigani*, D.I. 110 (Del. Ch. Nov. 19, 2013).

[33] *Connolly v. Labowitz*, 1984 WL 14132, at *6 (Del. Super. Dec. 17, 1984). The parties dispute the applicability and implications of *Connolly*. I do not read it to be as narrow as the Defendant and Principal do, instead understanding it simply to suggest that for mental condition to be "in controversy" it must be more than a bald statement bearing no meaningful relevance.

[34] *Tigani*, D.I. 109 at 9:8–11.

[35] *Connolly*, 1984 WL 14132, at *6.

[36] 12 *Del. C.* § 49A-116.

[37] *Id.*

order further inquiry into the principal's capacity."[38] Vice Chancellor Glasscock first developed this test in *Parkhurst v. Nalley*,[39] and I expanded upon its utility in *Harker v. Grimes* as follows:

> Its gatekeeping function is of paramount importance and mirrors the gatekeeping this Court exercises with other capacity challenges, namely, adult guardianships and will contests. In the former, this Court will not schedule a hearing on a petition for guardianship or appoint an attorney *ad litem* for a person with an alleged disability unless the petitioner seeking guardianship has pled sufficient allegations regarding lack of capacity. The petitioner(s) must do so in their originating petition and with the support of a physician's affidavit, on the Court's form. Similarly, a will contest alleging lack of testamentary capacity, weakened intellect, or susceptibility will not survive a motion to dismiss for failure to state a claim unless the plaintiff avers specific, non-conclusory facts as to diminished capacity. In both arenas, this Court ensures that the party challenging capacity states a non-conclusory basis for their challenge before the Court will allow further inquiry or investigation. By drawing this line, the Court shows great respect for, and protects, personal liberty, autonomy, and dignity.[40]

Here, the Plaintiffs contend an examination is urgently needed and supported by their pleadings. But their invocation of Rule 35 would work an end run around the Principal's statutory right to move to dismiss and join issue on the alleged incapacity in the pleadings.

---

[38] 2022 WL 3665050, at *6 (Del. Ch. May 31, 2022), *adopted*, 2022 WL 2177693 (Del. Ch. June 15, 2022).

[39] C.A. No. 11930-VCZ (SG).

[40] *Harker*, 2022 WL 3665050, at *6.

As I explained in *Harker*, "[c]onclusory or vague allegations of lack of capacity should not be sufficient to force an inquiry into a principal's capacity[,]" because doing so would render "the presumption of capacity to seek dismissal of challenges to such appointment . . . meaningless."[41] The same reasoning applies here. The Plaintiffs should not be permitted to shortchange a principal's right to file a dispositive motion by invoking a discovery rule. The Principal should first be permitted to file and pursue her motion to dismiss, challenging the pleadings and, specifically, whether there is a *prima facie* pleading of incapacity. On that motion practice, I can then, as contemplated by *Parkhurst* and its progeny, decide whether further inquiry like an examination under Rule 35 is necessary.

In so holding, I appreciate—and share—the Plaintiffs' concerns about delay. It is unclear to me why the Principal has yet to file her motion to dismiss, and she is hereby ordered to do so expeditiously. The Principal's motion to dismiss shall be filed within one week of this ruling.

If the Principal fails to meet this deadline or demonstrate good cause for an extension, I am inclined to weigh her delay against her and grant the Motion to Compel Examination. I am denying the Motion to Compel Examination to protect and respect the Principal's statutory rights. But if she does not move forward with

---

[41] *Id.* at *7.

alacrity, and I am required to review the pleadings and the Plaintiffs' request in isolation, good cause supports inquiry into her capacity and Rule 35 will be a ripe avenue to order as much.[42]

\* \* \*

This is a magistrate's report and exceptions under Court of Chancery Rule 144 are stayed until my final ruling on the merits.

Respectfully,
*/s/ Selena E. Molina*
Senior Magistrate in Chancery

---

[42] If I must do so, I will require an independent medical examination. Recognizing that: (1) the medical examiner proposed by the Plaintiffs is not truly independent (as evidenced by the fact that the Plaintiffs "retained" their proposed examiner), and I am also not confident that the doctor previously utilized by the Principal is sufficiently independent as her long-standing doctor, and (2) that compelling a mental examination is certainly an intrusion unto the Principal's person, I would work to keep the inconvenience and intrusion to a minimum, and look to the parties to help craft an appropriate directive for any necessary inquiry.